CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 26 2010
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| LINDA PENDLETON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:10CV00009 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| NATIONAL WILDLIFE FEDERATION ) | By: Hon. Glen E. Conrad |
| and ) | United States District Judge |
| MARTIN PRICE, ) | |
| ) | |
| Defendants. ) | |

Linda Pendleton filed this civil action against her former employer, National Wildlife Federation ("NWF"), and her former supervisor, Martin Price, setting forth allegations of sexual harassment and retaliation against NWF under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and a common law claim for assault against Price. The case is presently before the court on the defendants' motion to dismiss. For the reasons that follow, the motion will be granted in part and denied in part.

## Background

The following facts, taken from the plaintiff's complaint, are accepted as true for purposes of the defendants' motion to dismiss. See Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).

On September 20, 2004, the plaintiff began working as a manager at an NWF retail store in Winchester, Virginia, where she was supervised by defendant Price. In November of 2004, a part-time sales associate advised the plaintiff that she felt uncomfortable being around Price and another store employee, and expressed concerns of possible sexual harassment. Because the

plaintiff had also witnessed Price engage in inappropriate behavior with young women at the store, and had heard him make rude comments of a sexual nature, the plaintiff "knew that she had to tell someone in HR so it could be stopped." (Compl. at para. 10). Consequently, the plaintiff reported Price's behavior to Ethel Nichols, Director of Human Resources for NWF's Winchester division, in late November or early December of 2004.

A few weeks later, Price confronted the plaintiff and told her that "someone from the store had turned him in to Ms. Nichols," and that "he would find out who did it and . . . pay them back." (Compl. at para 22). On another occasion, Price threatened to make the plaintiff and another employee work without taking any breaks. When the plaintiff questioned the legality of the suggested work schedule, Price became angry and acted as if he was trying to punish the plaintiff.

The plaintiff's working relationship with Price continued to deteriorate. On June 14, 2005, after the plaintiff returned from a leave of absence, Price interrupted a meeting that the plaintiff was having with another employee in order to ask the plaintiff a question. In response to the plaintiff's answer, Price "began yelling . . . that he was not going to put up with her any longer and that he was tired of [the plaintiff]." (Compl. at para. 39). When the plaintiff moved away from him, Price followed her and said, "I'm not done with you yet, wait to see what happens to you next." (Compl. at para. 40). Price then pointed his finger in the plaintiff's face, raised his voice, and stepped closer to the plaintiff. When the plaintiff advised Price to move his finger away from her face, Price moved closer to the plaintiff and "said he would talk to her anyway he wanted [since] he was still [her] boss." (Compl. at para. 42). The plaintiff alleges that she felt threatened by Price and that she was afraid that he was going to hit her. Price

2

initially followed the plaintiff into another area of the store, but eventually stopped and left the building.

Records submitted by the defendants indicate that the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 8, 2005, in which the plaintiff complained of sexual harassment and retaliation. On September 20, 2006, the EEOC dismissed the charge and issued a right-to-sue notice. The notice specifically advised the plaintiff that she had 90 days in which to file a lawsuit in federal or state court.

On December 21, 2006, the plaintiff filed a complaint against NWF and Price in the Circuit Court for the City of Winchester, asserting claims under Title VII against NWF and a common law claim for assault against Price. On May 23, 2008, after the case had been pending approximately 17 months without being served, the Circuit Court issued a notice to appear, in which the Court threatened to dismiss the action if the plaintiff did not appear for a pretrial conference on July 25, 2008 or otherwise respond to the notice. Thereafter, the plaintiff filed a motion for a voluntary non-suit. The Circuit Court ultimately granted the motion and dismissed the case without prejudice on July 17, 2008.

On January 8, 2009, the plaintiff filed the instant action in the Circuit Court for the City of Winchester. Upon being served with process approximately one year later, NWF and Price removed the action to this court.[1] On February 3, 2010, the defendants moved to dismiss the

---

[1] In their notice of removal, the defendants noted that the court has original jurisdiction over the action under 28 U.S.C. § 1331, since the action includes claims under Title VII, and that the court has original jurisdiction under 28 U.S.C. § 1332, since the action is between citizens of different states and the amount in controversy exceeds $75,000.

plaintiff's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That motion has been fully briefed and is now ripe for review.[2]

## Legal Standards

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

A Rule 12(b)(6) motion to dismiss must be treated as a motion for summary judgment "where materials outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether to grant a motion for

---

[2] Neither side requested a hearing on the defendants' motion.

summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

In moving to dismiss the plaintiff's complaint, the defendants assert three arguments. First, the defendants argue that the plaintiff's claims under Title VII are time-barred. Second, the defendants argue that the allegations in the plaintiff's complaint are insufficient to state a claim for assault against Price. Third, the defendants argue that the plaintiff's claims are barred by the doctrine of laches. The court will address each of these arguments in turn.

### I. The Timeliness of the Plaintiff's Title VII Claims

To the extent the plaintiff asserts claims for sexual harassment and retaliation in violation of Title VII, the defendants argue that such claims are subject to dismissal because the instant action was filed more than 90 days after the plaintiff received the right-to-sue notice from the EEOC. To support this argument, the defendants have submitted a copy of the charge of discrimination filed by the plaintiff, as well as a copy of the right-to-sue notice issued by the EEOC. In her response to the defendants' motion, the plaintiff does not dispute the authenticity of these extrinsic documents. Because the court will consider the documents in addressing whether the plaintiff's Title VII claims are time-barred, the court will assess the defendants' motion to dismiss as a motion for summary judgment with respect to this issue.[3] See Ford v. Advanced Mktg. Servs., 2000 U.S. App. LEXIS 372, at *3 (4th Cir. Jan. 20, 2000) (noting that a motion to dismiss should be treated as one for summary judgment if the court considers materials outside the pleadings, and that the district court "effectively convert[ed] the motion to dismiss to

---

[3] The defendants' remaining arguments will be considered under Rule 12(b)(6).

a motion for summary judgment" by comparing two EEOC charges of discrimination); Rohan v. Networks Presentation LLC, 175 F. Supp. 2d 806, 809 (D. Md. 2001) (converting a motion to dismiss to a motion for summary judgment in an employment discrimination case, since the court was considering such extrinsic documents as the charge of discrimination filed with the EEOC).

As the defendants emphasize in the instant motion, Title VII plaintiffs have 90 days to file their claims in federal or state court upon receipt of a right-to-sue notice from the EEOC. Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40, 42 (4th Cir. 1993) (citing 42 U.S.C. § 2000e-5(f)(1)). While the plaintiff makes no allegation concerning her receipt of a right-to-sue notice, the undisputed record shows that the EEOC mailed the right-to-sue notice to the plaintiff on September 20, 2006. Where, as here, the actual date of the plaintiff's receipt of the right-to-sue notice is unknown, the court will presume that the plaintiff received the notice within three days after the notice was mailed by the EEOC. See Asbury v. City of Roanoke, 599 F. Supp. 2d 712, 717 (W.D. Va. 2009) (citing Williams v. Enterprise Leasing Co., 911 F. Supp. 988, 991 (E.D. Va. 1995)). Applying the three-day presumption, the plaintiff received the right-to-sue notice on September 23, 2006. The ninety-day filing period commenced on that date and ended on December 22, 2006. Because the plaintiff did not file the instant action until January 8, 2009, more than two years after receiving the right-to-sue notice, her Title VII claims are untimely.

In response to the defendants' motion, the plaintiff argues that the Virginia tolling statute, Virginia Code § 8.01-229, should be applied to her Title VII claims. However, that statute, which provides that the applicable statute of limitations is tolled by the commencement of a non-suited action and for six months thereafter, does not apply to the time limits set forth in a federal

statute such as Title VII. In other words, because Title VII actions are governed by a federal statute of limitations, state tolling provisions are inapplicable.[4] Garrison v. Int'l Paper Co., 714 F.2d 757, 759 n.2 (8th Cir. 1983); see also Draper v. United States Pipe & Foundry Co., 527 F.2d 515, 522 (6th Cir. 1975) (stating that "[because] Title VII establishes its own statute of limitations, . . . state law is irrelevant in determining whether a private individual has lost [her] right of action under Title VII through the passage of time."); Brown v. Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d 959, 961 (10th Cir. 1991) (emphasizing that "[w]hen Congress has provided a federal statute of limitation for a federal claim, . . . state tolling and saving provisions are not applicable"); Neal v. Xerox Corp., 991 F. Supp. 494, 499 (E.D. Va. 1998) (holding that Virginia's non-suit provision did not save the plaintiff's Title VII action, since such action is governed by a federal 90-day limitation period).

Based on the foregoing case law, the court concludes that the 90-day period of limitation applicable to the plaintiff's Title VII claims was not tolled, pursuant to Virginia Code § 8.01-229, as a result of her voluntary non-suit. Because the instant action was filed more than two years after the plaintiff received the right-to-sue notice from the EEOC, her claims under Title VII are clearly time-barred. Accordingly, the court will grant the defendants' motion with respect to these claims.

---

[4] By relying on the Virginia tolling statute, the plaintiff appears to recognize that, under federal law, "a voluntary dismissal without prejudice [generally] leaves the parties as though the action had never been brought." Brown v. Hartshorne Public Sch. Dist. No. 1, 926 F.2d 959, 961 (10th Cir. 1991). Consequently, "[c]ourts have specifically held that the filing of a complaint that is dismissed without prejudice does not toll the statutory filing period of Title VII." Id.; see also Price v. Digital Equip. Corp., 846 F.2d 1026, 1027 (5th Cir. 1988); Wilson v. Grumman Ohio Corp., 815 F.2d 26, 28 (6th Cir. 1987); Neal v. Xerox Corp., 991 F. Supp. 494, 498 (E.D. Va. 1998).

## II. The Sufficiency of the Plaintiff's Claim for Assault

In addition to her claims under Title VII, the plaintiff asserts a claim for assault against defendant Price. Under Virginia law, "a common law assault, whether a crime or tort, occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm *or* engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." Carter v. Commonwealth, 606 S.E.2d 839, 841 (Va. 2005) (emphasis in original). Unlike the tort of battery, "[t]here is no requirement that the victim of such acts be physically touched." Etherton v. Doe, 597 S.E.2d 87, 89 (Va. 2004); see also Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003) (explaining that the torts of assault and battery "go together like ham and eggs," and that "the difference between them is that between physical contact and the mere apprehension of it") (internal citation and quotation marks omitted).

The claim for assault in this case is premised on events that occurred on June 14, 2005, after the plaintiff returned from a leave of absence. As previously summarized, the plaintiff alleges that while she was meeting with another employee, Price interrupted the meeting to ask the plaintiff a question. After the plaintiff responded to the question, Price "began yelling at Plaintiff that he was not going to put up with her any longer and that he was tired of Plaintiff." (Compl. at para. 39). When the plaintiff moved away from him, Price followed her and said, "I'm not done with you yet, wait to see what happens to you next." (Compl. at para. 40). Price then pointed his finger in the plaintiff's face, and raised his voice while stepping closer to her. When the plaintiff told Price to move his finger and to not talk to her in such a manner, Price said that he could talk to the plaintiff anyway he wanted since he was still her boss, and moved closer

8

to the plaintiff. The plaintiff alleges that she then "opened the door to go to [the] sales floor," because "she felt threatened and felt [Price] might hit her." (Compl. at para. 43). Although Price initially followed the plaintiff, he eventually stopped and left the building.

Accepting the truth of the foregoing allegations, the court is constrained to conclude that the plaintiff's claim for assault is sufficient to withstand the defendants' motion to dismiss. While the defendants argue that the plaintiff fails to allege that Price explicitly threatened her with bodily harm, the defendants cite no case law from the Virginia Supreme Court which establishes such requirement. Likewise, contrary to the defendants' argument, there is no requirement that "any force or violence . . . was used against [the plaintiff]." (Defs.' Br. at pg. 7). While it is true that the case of Simmons v. Norfolk & W. R. Co., 734 F. Supp. 230, 232 (W.D. Va. 1990) (Turk, J.), suggests that physical force or violence is necessary for an actionable assault claim, the Virginia Supreme Court has since made clear, on multiple occasions, that no physical touching is required to state a claim for assault. See, e.g., Etherton, 597 S.E.2d at 89; Koffman, 574 S.E.2d at 261. As previously explained, the Supreme Court has defined the tort of assault to include conduct intended to place a victim in apprehension of bodily harm, and which creates such reasonable apprehension in the victim. See Carter, 606 S.E.2d at 841. At this stage of the litigation, the court is convinced that the allegations in the plaintiff's complaint, viewed in their totality, are sufficient to meet this definition. Compare Bowles v. May, 166 S.E. 550, 553 (Va. 1932) (holding that the facts of record were insufficient to prove a claim for assault, where the only evidence to support the claim was that the defendant shook his finger at the plaintiff "while the parties were seated and plaintiff was some eight feet or more from where defendant was sitting"), with Campoverde v. Sony Pictures Entm't, 2002 U.S. Dist. LEXIS 18347, at *30-

31 (S.D.N.Y. Sept. 30, 2002) (holding that the plaintiff's claim for assault under New York law was sufficient to survive a Rule 12(b)(6) motion, where the plaintiffs "alleged that defendants' employees physically moved toward them threateningly, causing plaintiffs to retreat because they were in fear of imminent harm").[5] Accordingly, for the foregoing reasons, the defendants' motion to dismiss will be denied with respect to the plaintiff's claim for assault against Price.

### III. The Doctrine of Laches

As a final argument, the defendants contend that even if the plaintiff's claim for assault is sufficiently pled, the claim should nonetheless be barred by the doctrine of laches. While the court is not unsympathetic to the defendants' argument that the plaintiff has unreasonably delayed pursuing the instant action, both the United States Court of Appeals for the Fourth Circuit and the Virginia Supreme Court have held that "laches is a doctrine that applies only in equity to bar equitable actions, not at law to bar legal actions." Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 797 (4th Cir. 2001); see also Portsmouth v. Chesapeake, 349 S.E.2d 351, 354 (Va. 1986) (holding that "[l]aches, a species of estoppel, is an equitable defense," and that "[a] proceeding to enforce a legal right is not subject to the equitable defense of laches"); Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 874 (Va. 1983) (emphasizing that "the doctrine of laches does not apply in this action at law."). Consequently, the defense of laches is unavailable to defeat the plaintiff's claim for assault, and the defendants' motion must be denied with respect to this argument.

---

[5] The court notes that, similar to Virginia law, "under New York law, a civil assault action lies where there is an intentional attempt or threat to do [physical] injury or commit a battery, thereby placing an individual in reasonable apprehension of bodily harm." Farash v. Cont'l Airlines, Inc., 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008) (alteration in original).

## Conclusion

For the reasons stated, the motion to dismiss filed by the defendants will be granted in part and denied in part. Defendant NWF will be dismissed from the case, and the case will proceed as to the plaintiff's claim against Price.[6]

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

ENTER: This 26th day of March, 2010.

_____
United States District Judge

---

[6] Because the plaintiff and Price are citizens of different states, and the plaintiff seeks compensatory and punitive damages from Price totaling more than $75,000, the court has original jurisdiction over the remaining state law claim, pursuant to 28 U.S.C. § 1332. Nonetheless, even if it is later shown that the amount in controversy is less than the $75,000 threshold set forth in § 1332, the court will nonetheless retain supplemental jurisdiction over this claim.